## THE COLUMBIA.

A steamer crossing another so as to involve risk of collision, condemned in a case of collision:

    1st. For violation of the regulation, then existing, that when steam-vessels were so crossing, the one which had the other on her own starboard should keep clear.

    2d. For not keeping clear, being the following vessel.

APPEAL from the Circuit Court for the Southern District of New York.

The owners of the propeller Jersey Blue libelled the steamship Columbia, one of the Charleston line of steamers, in the District Court for the Southern District of that State, on account of a collision which occurred in the harbor of New York, on the afternoon of the 7th of January, A.D. 1860. The case, as assumed by the court on the testimony, was thus:

The propeller started on a voyage from the coal docks in Jersey City across the Hudson to the East River. The tide was strong ebb, and there was very little wind. From her start her course was nearly towards the Battery, New York, somewhat south of east, and she kept on that course until almost immediately before the collision. Her rate of speed was probably not far from six miles an hour. Soon after she left the docks the steamship Columbia pushed out from pier No. 4, on the New York side of the Hudson, to commence her voyage to Charleston. There was at that time a body of floating ice, extending outward from the piers six or eight hundred feet, but beyond the ice the river was clear. As the ship hauled out into the stream her bow was swung by the tide downward, and her helm was put to the starboard. Whether she had cleared the ice-fields before she headed down the bay, was a matter somewhat disputed, but not one of importance. If she had not entirely cleared it, she had so far done so as that only her port wheel was in the ice-field when she met the propeller. All was open on her starboard side. She proceeded down the river, in a course nearly parallel with the outer ends of the piers, prob-

ably just on the outer edge of the ice-field, and at the rate of not less than four miles an hour.   When she came to a point nearly opposite Castle Garden, and a little below the Battery, she collided with the propeller, her starboard wheel

mounting the deck of the propeller about midships, on the larboard side, and walking over it forty or fifty feet, doing considerable damage.   There were other important circumstances preceding the collision.   The Columbia was seen from the propeller soon after she hauled out from the pier and commenced swinging down the river.   The propeller then blew one whistle, which was not answered.   When the vessels approached each other and danger of collision appeared, the propeller again blew one whistle, thus signalling that she intended to pass on the right.   This second signal

was not answered. But when they came within six or seven hundred feet of each other the pilot of the Columbia hailed that he could not stop, and the engine of the propeller was immediately reversed, and she commenced backing. The backing was continued until the collision, entirely stopping the headway of the propeller, and swinging her head somewhat outwards from New York. On the other hand, the propeller was seen from the Columbia when the latter was only about one hundred yards from pier No. 4, and before she had taken her course down the river. She was seen to be heading from Jersey City about towards the Battery, and to be, at most, about half a mile distant. She was off the starboard bow of the Columbia, and only her port side could be seen. It was apparent that her course must cross any course the Columbia could take. After the latter had headed down the river and had come within six or seven hundred feet of the propeller, her helm was put to the starboard, so that she headed inside of Governor's Island, instead of west of the island, her proper course out to sea. She then hailed, but did not stop her engine, or certainly not, until the collision had taken place.

Thus far there was very little controversy in regard to the facts. Most of them appeared in the answer to the libel. and from the testimony of the pilot of the Columbia.

But the libellants relied, for the condemnation of the steamer, on another fact, which they conceived that the evidence showed; the fact, namely, that the Columbia was the *following* vessel, and so by the rules of navigation bound to keep out of the propeller's way. On this part of the case, Chadsey, the captain of the Jersey Blue, testified that he first saw the Columbia when his own vessel was south of pier No. 1, and two or three hundred yards distant; that he saw her over his left shoulder as he was standing at the wheel; that she was then just coming out of pier No. 4, and swinging down the river. This was evidently before she had straightened on her course. If this was so, the Columbia must have been above, namely, further up the river, and the following vessel. Captain Chadsey's testimony was corrob-

orated by that of Green, the engineer, Taylor, a deck hand, and by the testimony of Klickner and Pritchard, shipwrights, who repaired the propeller after the collision. The shipwrights both testified that "the character of the injuries showed that the steamship must have struck her and worked forward on her;" "that the motive force must have come from aft forward;" that the chain-bolts of the propeller were bent forward; and that this could not have been, but on the contrary, the exact reverse, unless the Columbia overtook the propeller and struck her from aft.

The evidence offered to rebut this was that of Hutchinson, the engineer of the Columbia, who stated that when he saw the propeller she was some two hundred yards distant, headed obliquely to the Columbia, and *as he thought*, above. He added immediately: "*However, my not being on the deck to notice the compass, everything appeared abeam to me.*" Kelso, the pilot, stated that when he first saw the propeller (his own ship being one hundred yards out from pier No. 4) she was half a mile distant, and his *impression* was that she was above at the time, though he adds, "*I cannot swear she was above; the boats were angling towards one another.*" There was no other testimony given to prove that the Columbia was not the following vesse

The District Court dismissed the libel, but on appeal to the Circuit Court the decree was reversed, and judgment given against the Columbia. The case was now here on appeal from that decree.

*Mr. Benedict, for the appellant; Mr. Donohue, contra.*

Mr. Justice STRONG, having stated the case, delivered the opinion of the court.

From those facts which appear in the answer to the libel, and from the testimony of the pilot of the Columbia, and about which there is very little controversy, it is not difficult to determine where the fault of the collision in this case lies. The propeller was all the time, from the moment she was first seen, off the starboard side of the Columbia. It was

therefore the duty of the latter to keep out of the way. The regulations then existing required that when two steam vessels were crossing, so as to involve risk of collision, the one which had the other on her own starboard should keep clear. Plainly she had no right to expect the propeller to change her course. It was therefore a fault in the Columbia that she did not port her helm and go astern of the other vessel. And the fault was the more inexcusable because she knew, even before she had settled on her course, that the course of the propeller must take her across any line the Columbia could take in going directly out to sea. There was nothing, then, to prevent her adopting such a course as would have avoided all danger of a collision. Instead of that she went straight down the river, in a line nearly parallel with the ends of the piers and very near to them, and, as the vessels approached each other on converging lines, she swung to port, so as to come more directly into the line of the propeller's course. This was the exact opposite of what she should have done.

We think also the evidence establishes that the Columbia was the following vessel, and, if she was, another regulation required her to keep out of the way of the propeller. There is no satisfactory evidence to rebut the testimony of Captain Chadsey as to the positions of the vessels, and it is corroborated by the testimony of Green, the engineer, Taylor, a deck hand, and of both the shipwrights who repaired the propeller. They both testify that the force of the collision must have come from aft forward. The chain-bolts of the propeller were bent forward, which could not have been unless the Columbia overtook the propeller and struck her from aft. The testimony given to prove that the Columbia was not the following vessel manifestly tends to prove the contrary. Maps have been exhibited to us describing the situation of the piers and the course of the propeller from the coal docks to the place of collision. If they are to be relied upon, and if the propeller was not more than a half mile from the Columbia when Kelso (the pilot) saw her, she must have been below pier No. 1, as the evidence for the

libellant shows she was, when the Columbia was only one hundred yards from pier No. 4. It seems to be satisfactorily established, therefore, that the Columbia was the following vessel. Of course the fault of the collision was hers. She had two courses before her, either of which would have avoided the disaster. Had she put farther out from her pier, where she had clear water, before heading down the river, or if, after heading down, she had ported her helm, as the regulations required, instead of starboarding, or even if she had stopped when she saw danger of collision, she would have passed astern of the propeller and no injury would have been done. By so doing she would have pursued her most direct course out to sea. But she did neither. She made no attempt to slacken her speed when the danger became imminent, and by starboarding she precipitated herself directly upon the libellant's vessel.

DECREE OF THE CIRCUIT COURT AFFIRMED, WITH INTEREST AND COSTS.